UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| THERESA YOUNG, | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | CA 04-349 M |
| | : | |
| JO ANNE B. BARNHART, | : | |
| COMMISSIONER, | : | |
| SOCIAL SECURITY ADMINISTRATION, | : | |
| Defendant. | : | |

**MEMORANDUM AND ORDER**

This matter is before the court on a request for judicial review of the decision of the Commissioner of Social Security ("the Commissioner"), denying Disability Insurance Benefits ("DIB"), under §§ 205(g) and 1631(c)(3) of the Social Security Act, as amended, 42 U.S.C. §§ 405(g) and 1383(c)(3) ("the Act"). Plaintiff Theresa Young ("Plaintiff") has filed a motion for summary judgment, requesting remand to the Commissioner for further administrative proceedings. Defendant Jo Anne B. Barnhart ("Defendant") has filed a motion for an order affirming the decision of the Commissioner.

With the parties' consent, this case has been referred to a magistrate judge for all further proceedings and the entry of judgment in accordance with 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73. For the reasons set forth herein, I find that the Commissioner's decision that Plaintiff is not disabled is not legally correct. Accordingly, based on the following analysis, I order that Plaintiff's Motion for Summary Judgment (Document ("Doc.") #7) ("Motion for Summary Judgment") be granted, that Defendant's Motion for an Order Affirming the Decision of the Commissioner (Doc. #9) ("Motion to Affirm") be denied, and that the matter be remanded for further proceedings consistent with this Memorandum and Order.

**Procedural History**

Plaintiff filed the instant application for DIB on August 24, 2001, alleging disability since June 7, 2000, due to left shoulder pain. (Record ("R.") at 17, 91-93, 110)  The application was denied initially and on reconsideration (R. at 61, 62, 65-68, 70-73), and Plaintiff timely requested review by an Administrative Law Judge ("ALJ") (R. at 77).  A hearing was conducted on March 4, 2003, at which Plaintiff, represented by counsel, appeared and testified.  (R. at 16, 30, 36-51, 53-55)  A vocational expert ("VE") also testified.  (R. at 51-53, 55-58)

On November 20, 2003, the ALJ issued a decision in which he found that Plaintiff was not disabled, and, therefore, not entitled to DIB, because she retained the residual functional capacity ("RFC") to perform her past relevant work as a roller skating rink manager as that work was usually performed.  (R. at 16-23)  Plaintiff appealed the ALJ's decision to the Appeals Council (R. at 11-12), which on June 30, 2004, declined Plaintiff's request for review (R. at 5-7), thereby rendering the ALJ's decision the final decision of the Commissioner (R. at 5).

Plaintiff filed a Complaint (Doc. #1) in this court on August 17, 2004.  Defendant on November 3, 2004, filed her Answer (Doc. #4), and the case was subsequently assigned to this Magistrate Judge, see Order of Reference (Doc. #5).  On January 25, 2005, Plaintiff filed the instant Motion for Summary Judgment (Doc. #7).  The Motion to Affirm (Doc. #9) was filed on February 22, 2005.  On March 11, 2005, Plaintiff's Reply to Defendant's Motion for an Order Affirming the Decision of the Commissioner (Doc. #10) was filed.

**Issue**

The issue for determination is whether the decision of the Commissioner that Plaintiff is not disabled within the meaning of the Act, as amended, is supported by substantial evidence in the

2

record and is free of legal error.

## Background

Plaintiff was born on June 16, 1947, and was fifty-six years old at the time of the hearing.  (R. at 17, 34, 36, 91)  She has a high school general equivalency degree and past relevant work experience as a manager/assistant manager of a roller skating rink.  (R. at 17, 34, 111, 116)  Plaintiff is right-handed.  (R. at 36)

## Medical Evidence

The record contains the following exhibits pertaining to Plaintiff's physical impairments: medical records from John Horan, M.D., spanning the period from 1967 through February 20, 2003 (R. at 212-242); office notes, test results, and letters from William F. Brennan, M.D., Plaintiff's treating orthopedist, covering the period from April 19, 1996, through December 11, 2002 (R. at 154-192, 202, 205-211); medical records from Kent County Memorial Hospital dated April 27, 1999 (R. at 135-136); a report of a consultative examination performed by Randall L. Updegrove, M.D., an orthopedist, on December 28, 2000 (R. at 137-141); and a report of another consultative examination by Andrew Green, M.D., another orthopedist, on October 9, 2001 (R. at 142-144).  In addition, Residual Functional Capacity ("RFC") Assessments and Disability Determination Services ("DDS") Case Review Forms were completed by two DDS physicians, Stephen R. Fish, M.D., and Thomas Bennett, M.D., dated October 15, 2001, and March 28, 2002, respectively.  (R. at 145-153, 193-201)

As to Plaintiff's mental impairment, the record includes treatment notes, two Emotional Impairment Questionnaires, and a Supplemental Questionnaire as to Residual Functional Capacity from Teri Pearlstein, M.D., Plaintiff's treating psychiatrist, covering the period from January 26, 2001, through March 4, 2003 (203-204, 253-264); and a Psychological Test Report and a

3

Supplemental Questionnaire as to Residual Functional Capacity
from John P. Parsons, Ph.D., who evaluated Plaintiff on February
22, 2003, at the request of her attorney  (R. at 243-251).

## Administrative Hearing

Plaintiff, represented by counsel, appeared at the March 4,
2003, hearing.  (R. at 16, 30)  Plaintiff's counsel made an
opening statement in which she noted that Plaintiff has a long-
standing history of psychiatric illness, that she fractured her
ankle in July of 2001, and that she also has a problem with her
left shoulder which results in a great deal of pain in her left
arm so that she has difficulty using the arm and hand.  (R. at
34-35)  Counsel argued that Plaintiff is disabled as a result of
the combination of her psychiatric impairments, the pain and
limited use she has of her left upper extremity, and the pain she
experiences from her ankle.  (R. at 35)

Plaintiff then testified.  (R. at 36-51, 53-55)  She stated
that for the last fifteen years she worked as an assistant
manager or manager of a roller skating rink.  (R. at 37)
According to Plaintiff, the job involved hiring, supervising, and
firing approximately twenty-five employees (id.); a minimal
amount of record keeping, mainly filling out daily safety
reports, completing the regular worksheet for the money that came
in each night, and adding the payroll hours from the time cards
(R. at 37-38); and a lot of maintenance work, including lifting
heavy helium tanks perhaps once a week, replacing the box of
syrup in the soda fountains about two or three times a day,
fixing ceiling leaks with tar contained in five-gallon containers
three or four times a week, emptying thirty gallon trash
containers, and lifting packages and skates on a daily basis (R.
at 37, 53-55).  Plaintiff related that she was currently working
part-time for her son, three days a week for three hours a day.
(R. at 38, 46)

4

Asked why she felt she was not able to work full-time, Plaintiff responded that she gets depressed and finds herself crying for no reason.  (R. at 39)  In response to an inquiry about why she had not mentioned depression on her initial application for benefits, Plaintiff stated that she had misunderstood the form and thought it was related only to her work accident.  (R. at 39-40)  Plaintiff testified that she often gets headaches.  (R. at 40)  She also indicated that she could not work because of her shoulder and noted that the pain from her shoulder radiates up into her neck and she gets a stiff neck. (Id.)  She said that this "comes from doing too much, just doing ...."  (Id.)  According to Plaintiff, the result is that she "can't turn ...."  She stated that the shoulder pain radiates across her back and sometimes even down to her good shoulder. (Id.)

Plaintiff testified that when she does a lot with her good shoulder she gets exhausted and the muscles in her right arm ache.  (R. at 40)  She said that she can lift nothing with her left arm and that with her right arm she can carry a gallon of milk or a bag of groceries, but she cannot lift them over her head.  (R. at 48)  Plaintiff related that she cannot stand for long periods of time because her legs ache (R. at 41) and estimated that she can only be on her feet for about forty-five minutes before needing to sit down (R. at 48).  According to Plaintiff, she also has to stand up after sitting for about forty-five minutes.  (Id.)  Plaintiff stated that she has difficulty driving because she must turn her whole body at the same time (R. at 40) and because it hurts her arm (R. at 46).

Regarding her medical care, Plaintiff testified that she currently treats with Dr. Brennan, whom she sees every six to eight weeks and who occasionally gives her a cortisone shot in the shoulder; Dr. Pearlstein, whom she sees every six months and

who monitors Plaintiff's medication, currently Effexor, and Dr. Horan, her family doctor, who takes care of her breathing problems[1] and prescribes inhalers and a sleeping pill, Lorazepam. (R. at 41-42) She also noted that she takes over-the-counter medications such as Advil or Tylenol at least once a day to relieve the pain in her shoulders, tension across her neck, and headaches. (R. at 48-49) Asked if she had any side effects from these or other medications she was taking at the time,[2] Plaintiff stated that she often has dry mouth, but knows of no other side effects. (R. at 46-47)

As for her daily activities, Plaintiff testified that she plans her day so that she only has to go out of the house once. (R. at 43) She makes herself coffee, but then gets depressed when she sees the stack of dishes in the sink which she had not done the day before. (Id.) Plaintiff related that she tries to think of how she will spend her day, but that she usually ends up not doing any of the things she planned because she does not have the energy. (Id.) When she works, she skips having coffee so that she does not change her mind and just gets going as quickly as she can. (Id.) On days she does not work she tries to do laundry, tries to vacuum but can only do a little at a time, tries to read but cannot concentrate, watches television, and visits her neighbor, a friend from high school, a couple of times a week. (R. at 43-45) Her brother-in-law visits because he cuts her grass and shovels her snow. (R. at 44) Her neighbors bring her the mail and put out her garbage. (R. at 45) She does her

[1] Asked by the ALJ if she was still smoking, Plaintiff replied "no." (R. at 42) She stated that she had quit "January 31, 10:30 in the morning." (Id.)

[2] According to the list of medications which Plaintiff and her attorney provided to the ALJ, Plaintiff was taking Effexor, Medoxyprogesterone, Lipitor, Norvase, Lorazepam, Premarin, Albuteral and Advair inhalers, Promethezine, and Nitrostat. (R. at 252)

own food shopping, but does not buy much.  (Id.)  Plaintiff has a
car, but only drives at most once a day.  (R. at 46)  Plaintiff
stated that she has trouble sleeping because of the pain in her
shoulder, wakes up about every hour, and usually gets only four
or five hours of sleep a night.  (R. at 49)  She feels generally
tired during the day and sometimes, perhaps three or four days
week, goes back to bed to rest.  (Id.)  Plaintiff related that
she occasionally leaves her part-time job early, but that more
often she just does not go in at all because her shoulder hurts.
(R. at 49-50)  This happens, according to Plaintiff, perhaps
three times a month.  (R. at 50)  Plaintiff testified that she
does not like to leave her house or go out, but does not know
why; that it bothers her to be around people; that she does not
like shopping or malls; and that she has had to leave places,
such as her neighbor's house, stores, or a mall because she felt
"itchy" and that she had to get out.  (R. at 44, 50)

     Joseph Testa, the VE, testified that Plaintiff's past work
was skilled work at the medium exertional level as she performed
it, but at the light exertional level as it is usually performed.
(R. at 52, 55)  The ALJ asked him whether a hypothetical claimant
with the same age, education, and work experience as Plaintiff,
with the RFC for light work but with limitations to force levels
at the sedentary level with respect to the non-dominant left hand
and arm, five pounds maximum grip, no reaching or activities
above chest level, and no repetitive use of that arm and hand
could perform the work as Plaintiff performed it in the past.
(R. at 55-56)  The VE responded that the hypothetical claimant
described could not do the work, because the job as Plaintiff
actually performed it required the use of both hands.  (R. at 56)
However, the VE stated that the hypothetical claimant could
perform the job as it is usually performed.  (Id.)  The ALJ then
added to the hypothetical a moderate reduction in the ability to

maintain attention and concentration, meaning an ability to maintain attention and concentration sufficient to perform simple work tasks for an eight-hour day, assuming normal breaks (on average every two hours) but the ability to maintain concentration or attention for complex, detailed tasks only occasionally and not for extended periods of time. (R. at 57) The VE testified that with that added non-exertional limitation the hypothetical claimant would not be able to perform Plaintiff's past work, either as she performed it or as it is usually performed. (Id.) According to the VE, this was because the required skills were too complex. (R. at 58)

## Standard of Review

The court's function in reviewing the Commissioner's decision is a narrow one. See Geoffroy v. Sec'y of Health & Human Servs., 663 F.2d 315, 319 (1st Cir. 1981). The court does not reconsider facts or re-weigh the evidence. See Schoenfeld v. Apfel, 237 F.3d 788, 792 (7th Cir. 2001); see also Rodriguez v. Sec'y of Health & Human Servs., 647 F.2d 218, 222 (1st Cir. 1981) ("[T]he resolution of conflicts in the evidence and the determination of the ultimate question of disability is for [the Commissioner], not for the doctors or for the courts."); Lopez v. Chater, 8 F.Supp.2d 152, 154 (D.P.R. 1998)("In reviewing the record, the district court must avoid reinterpreting the evidence or otherwise substituting its own judgment for that of the Secretary."). The decision "will be overturned only if it is not supported by substantial evidence,[3] or if it is based on legal

---

[3] The Supreme Court has defined substantial evidence as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971)(quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229, 59 S.Ct. 206, 217, 83 L.Ed. 126 (1938)); see also Lopez v. Chater, 8 F.Supp.2d 152, 154 (D.P.R. 1998); Suranie v. Sullivan, 787 F.Supp. 287, 289 (D.R.I. 1992).

error." <u>Johnson v. Shalala</u>, 60 F.3d 1428, 1432 (9th Cir. 1995).
If supported by substantial evidence in the record, the
Commissioner's decision must be upheld even if the record could
arguably support a different conclusion. <u>See</u> 42 U.S.C. §
405(g)(2002); <u>see also</u> <u>Lizotte v. Sec'y of Health & Human Servs.</u>,
654 F.2d 127, 131 (1st Cir. 1981) ("Although we as the trier of
fact might have reached an opposite conclusion, we cannot say
that a reasonable mind could not have decided as did the
[Commissioner] ....").

### Errors Claimed

Plaintiff alleges that the ALJ erred: (1) by ignoring the
opinions of both the treating orthopedist and a state agency
physician in formulating Plaintiff's RFC, <u>see</u> Plaintiff's
Memorandum of Law in Support of Motion for Summary Judgment
("Plaintiff's Mem.") at 1, 7; (2) in concluding that Plaintiff
could return to her past work as a roller skating rink manager,
<u>see</u> <u>id.</u> at 1, 12; and (3) in finding that Plaintiff suffered from
a nonsevere mental impairment, <u>see</u> <u>id.</u> at 1, 15. Each of these
claims will be discussed, albeit in a different order.

### Discussion

**I.   The ALJ's Decision**

To qualify for DIB, a claimant must meet certain insured
status requirements,[4] be younger than 65 years of age, file an
application for benefits, and be under a disability as defined by
the Act. <u>See</u> 42 U.S.C.A. § 423(a) (2003)(2005 Supp.). The Act
defines disability as the "inability to engage in any substantial
gainful activity by reason of any medically determinable physical
or mental impairment which can be expected to result in death or
which has lasted or can be expected to last for a continuous

---

[4] Plaintiff met the insured status requirements at least through
the date of the ALJ's decision. (R. at 17, 22)

period of not less than 12 months ...." 42 U.S.C.A. §
423(d)(1)(A) (2003)(2005 Supp.); see also 42 U.S.C.A. §
1382c(a)(3)(A) (2003)(2005 Supp.). A claimant's impairment must
be of such severity that she is unable to perform her previous
work or any other kind of substantial gainful employment which
exists in the national economy. See 42 U.S.C.A. §§ 423(d)(2)(A),
1382c(a)(3)(B). A severe impairment is defined as one which
significantly limits an individual's ability to do basic work
activities. See 20 C.F.R. § 404.1520(c) (2005); see also Bowen
v. Yuckert, 482 U.S. 137, 141, 107 S.Ct. 2287, 2291, 96 L.Ed.2d
119 (1987). The Commissioner is directed to "consider the
combined effect of all of the individual's impairments without
regard to whether any such impairment, if considered separately,
would be of such severity." 42 U.S.C.A. § 423(d)(2)(B). A
claimant's complaints alone cannot provide a basis for
entitlement when they are not supported by medical evidence. See
Avery v. Sec'y of Health & Human Servs., 797 F.2d 19, 20-21 (1st
Cir. 1986).

Following the familiar sequential evaluation,[5] the ALJ in
the instant case found that Plaintiff had not engaged in
substantial gainful activity since her alleged onset date. (R.

---

[5] The Social Security regulations prescribe a five-step inquiry
for use in determining whether a claimant is disabled. See 20 C.F.R.
§ 404.1520(a) (2005); see also Bowen v. Yuckert, 482 U.S. 137, 140-42,
107 S.Ct. 2287, 2291, 96 L.Ed.2d 119 (1987); Seavey v. Barnhart, 276
F.3d 1, 5 (1st Cir. 2001). Pursuant to that scheme, the Secretary must
determine sequentially: (1) whether the claimant is presently engaged
in substantial gainful work activity; (2) whether she has a severe
impairment; (3) whether her impairment meets or equals one of the
Secretary's listed impairments; (4) whether the claimant is able to
perform her past relevant work; and (5) whether the claimant remains
capable of performing any work within the economy. See 20 C.F.R. §
404.1520(b)-(f). The evaluation may be terminated at any step. See
Seavey, 276 F.3d at 4. "The applicant has the burden of production
and proof at the first four steps of the process." Freeman v.
Barnhart, 274 F.3d 606, 608 (1st Cir. 2001); see also Seavey, 276 F.3d
at 5.

at 17, 22)  He determined that Plaintiff did not suffer from a
severe mental impairment.  (R. at 21)  Additionally, while the
ALJ found that Plaintiff's left shoulder impairment was severe,
it did not meet or equal a listed impairment.  (R. at 20, 22)  He
concluded that the degree of incapacity alleged by Plaintiff was
inconsistent with the record as a whole.  (Id.)  The ALJ found
that Plaintiff retained the RFC to perform work-related functions
for light work that did not involve using the left arm to lift
above five pounds, work above chest level, or perform repetitive
motion.  (R. at 21-22)  Thus, the ALJ determined that Plaintiff's
impairments did not prevent her from performing her past relevant
work as generally performed and concluded that Plaintiff was not
disabled as defined in the Act.  (R. at 22)

## II.  Analysis

### A.  The ALJ's finding that Plaintiff's mental impairment was not severe

The ALJ found that Plaintiff's mental impairment was
nonsevere.  (R. at 21)  Plaintiff argues that the ALJ failed
properly to evaluate Plaintiff's mental impairments using the
"special technique" as required by 20 C.F.R. § 404.1520a and that
the ALJ improperly discredited the opinions of Plaintiff's
treating psychiatrist and examining psychologist.[6]  See
Plaintiff's Mem. at 16.  The court agrees.

A special technique is used in evaluating mental
impairments.  See 20 C.F.R. § 404.1520a(a) (2005).  In order to
determine whether a mental impairment is severe, the ALJ must
evaluate four areas of mental function that the Social Security
Administration ("SSA") has deemed essential to work: 1)

---

[6] Although Plaintiff states that the ALJ "improperly discredited
the opinions of two psychiatrists (one treating and one examining),"
Plaintiff's Memorandum of Law in Support of Motion for Summary Judgment
("Plaintiff's Mem.") at 16, John P. Parsons, Ph.D., is a psychologist,
not a psychiatrist (R. at 243).

activities of daily living; 2) social functioning; 3) concentration, persistence, or pace; and 4) episodes of decompensation.  See 20 C.F.R. § 404.1520a(c)(3); see also Figueroa-Rodriguez v. Sec'y of Health & Human Servs., 845 F.2d 370, 372 (1st Cir. 1988)(describing procedure); Guyton v. Apfel, 20 F.Supp.2d 156, 165 (D. Mass. 1998)(same).  In his written decision the ALJ must:

> incorporate the pertinent findings and conclusions based on the technique.  The decision must show the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s).  The decision must include a specific finding as to the degree[7] of limitation in each of the functional areas described in paragraph (c) of this section.

20 C.F.R. § 404.1520a(e)(2); see also Guyton, 20 F.Supp.2d at 165 (quoting 20 C.F.R. § 404.1520a(c)(4)).  Current regulations do not require completion of the Psychiatric Review Technique Form ("PRTF") by the ALJ but do require that his or her decision document application of the special technique.  See 20 C.F.R. § 404.1520a(e)(2).

Courts have found that in cases where a mental impairment exists, failure to follow the special technique constitutes legal error and requires remand.  See Moore v. Barnhart, 405 F.3d 1208, 1214 (11th Cir. 2005)("[W]here a claimant has presented a colorable claim of mental impairment, the social security regulations require the ALJ to complete a PRTF, append it to the decision, or incorporate its mode of analysis into his findings

---

[7] For the first three areas (activities of daily living, social functioning, and concentration, persistence, or pace), the ratings of limitation must be based upon the following five point scale: none, mild, moderate, marked, and extreme.  See 20 C.F.R. § 404.1520a(c)(4) (2005).  For the fourth area (episodes of decompensation), the following four point scale must be used: none, one or two, three, and four or more.  See id.

and conclusions.  Failure to do so requires remand."); <u>Gutierrez v. Apfel</u>, 199 F.3d 1048, 1051 (9th Cir. 2000)(holding that where there is a colorable claim of mental impairment, ALJ's failure to comply with 20 C.F.R. § 404.1520a requires remand); <u>Montgomery v. Shalala</u>, 30 F.3d 98, 100-01 (8th Cir. 1994)(reversing and remanding because ALJ purported to evaluate mental disorder, but failed to do so according to PRTF and its regulations); <u>Stambaugh v. Sullivan</u>, 929 F.2d 292, 296 (7th Cir. 1991)(holding that ALJ's failure to evaluate claimant's alleged mental disorder in accordance with the regulation required reversal and remand); <u>Hill v. Sullivan</u>, 924 F.2d 972, 975 (10th Cir. 1991)("Since the record contained evidence of a mental impairment that allegedly prevented claimant from working, the [Commissioner] was required to follow the procedure for evaluating the potential mental impairment set forth in [her] regulations and to document the procedure accordingly.  The [Commissioner] failed to follow the appropriate procedure, so we must remand the case for proper consideration of claimant's potential mental impairment.") (citation omitted); <u>Guyton</u>, 20 F.Supp.2d at 165 (holding that because ALJ failed to conduct mental impairment analysis outlined in 20 C.F.R. § 404.1520a, "this case must be remanded to the Administrative Law Judge to conduct a mental impairment assessment as required by the Social Security Act and its attendant regulations").

Here, the ALJ did not assign ratings to each of the four specified areas and made no mention of episodes of decompensation in his written decision.  Defendant argues that this error is harmless because the ALJ's decision reflects that in making his finding he considered the limitations on her activities of daily living, social functioning, and concentration, persistence, or pace.  <u>See</u> Defendant's Memorandum of Law in Support of Motion for an Order Affirming the Decision of the Commissioner ("Defendant's

Mem.") at 20 (citing R. at 20-21). Furthermore, Defendant contends that although the ALJ made no mention of any episodes of decompensation, the record contains no evidence of such episodes. See id.

Defendant cites Querido v. Barnhart, 344 F.Supp.2d 236 (D. Mass. 2004), and Arruda v. Barnhart, 314 F.Supp.2d 52 (D. Mass. 2004), in support of this contention. See Defendant's Mem. at 20-21. However, these cases are distinguishable. In both of these cases the ALJ had found the mental impairment to be severe, rendering any failure to follow the special technique harmless since the ruling at step two was already in the claimant's favor. See Querido, 344 F.Supp.2d at 254; Arruda 314 F.Supp.2d at 81. However, in the instant case, the ALJ found Plaintiff's mental impairment to be nonsevere at step two. Therefore, the reasoning of the Querido and Arruda courts does not apply. See Alley v. Apfel, No. 00-5-B, 2000 WL 1196336, at *2 (D. Me. June 16, 2000)("Here ... the administrative law judge implicitly found (and the record corroborates) that the plaintiff did suffer from a mental impairment, which the administrative law judge determined to be non-severe. He was in no position to make that determination in the absence of completion of a PRTF.")(citations omitted); Arsenault v. Apfel, No. 99-94-P-C, 1999 WL 33117126, at *2 (D. Me. Nov. 22, 1999)(holding that because ALJ determined that plaintiff suffered from mental impairment, which he determined was nonsevere, PRTF should have been completed and remand was therefore warranted).

The court concludes that the ALJ's failure to document application of the special technique cannot be considered harmless and that he committed legal error. Accordingly, the court remands the matter for compliance with 20 C.F.R. § 404.1520a.

Plaintiff also argues that, in determining there was no

14

evidence in the record that Plaintiff did not suffer from any vocationally significant functional limitations due to her psychological condition, the ALJ improperly rejected the opinions of Plaintiff's treating psychiatrist, Dr. Pearlstein, and an examining psychologist, Dr. Parsons. See Plaintiff's Mem. at 16. The ALJ described his conclusion as follows:

> In sum, neither Dr. Pearlstein's contemporaneously recorded treatment notes nor Dr. Parsons' consultative examination findings provide any support for a conclusion that the claimant ever experienced or would experience any vocationally significant functional limitations as a result of depression or any mental impairment or condition. The only evidence in the record which suggest[s] a contrary conclusion consists of a report or forms prepared at the request of counsel for purposes of supporting the claimant's disability claim. They are found to be much less reliable than the contemporaneously recorded medical documentation or the well-documented activities of daily living discussed above, and it must be concluded that the references to disabling levels of mental impairment in these prepared-for-litigation reports reflect patient accommodation or bias. On this basis, the undersigned finds that the claimant does not have a "severe" mental impairment.

(R. at 21)(citations omitted). The court finds this conclusion problematic for several reasons.

First, the Court of Appeals for the First Circuit has held that the step two severity regulation is a "de minimis policy, designed to do no more than screen out groundless claims." McDonald v. Sec'y of Health & Human Servs., 795 F.2d 1118, 1124 (1st Cir. 1986). A finding of "nonsevere" is only to be made where "medical evidence establishes only a slight abnormality or combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work ...." Id. (quoting Social Security Ruling ("SSR") 85-28, available at 1985 WL 56856). Here, however, Dr. Pearlstein had treated Plaintiff for her mental condition since at least 1995, diagnosing

Plaintiff with major depressive disorder, recurrent, moderate, in partial remission, and a history of post traumatic stress disorder ("PTSD"). (R. at 203, 256, 261) Plaintiff has been prescribed psychotropic medications such as Paxil, Klonopin, Prozac, Wellbutrin, and Effexor. (R. at 216, 222, 224, 256) Dr. Pearlstein indicated that Plaintiff was moderately severely impaired in her ability to relate to other people and respond appropriately to supervision, co-workers, and customary work pressures. (R. at 263-264) According to Dr. Pearlstein, Plaintiff's interests were moderately constricted, as was her ability to understand, carry out, and remember instructions, perform complex tasks, and perform varied tasks. (Id.) Dr. Pearlstein estimated that Plaintiff's daily activities were mildly restricted, that her personal habits had deteriorated to a mild degree, and that her ability to perform simple and repetitive tasks was mildly limited. (Id.) These points run counter to the ALJ's finding that the record lacks credible evidence that Plaintiff had experienced or would experience any "vocationally significant functional limitations" (R. at 21) as a result of her mental impairment.

Second, although the ALJ found Dr. Pearlstein's reports to conflict with her treatment notes[8] and Plaintiff's description of her daily activities (R. at 21), Plaintiff correctly observes that no other medical source evidence in the record contradicts Dr. Pearlstein's assessment, see Plaintiff's Mem. at 18. Plaintiff's "general physician" (R. at 18), Dr. Horan, recorded Plaintiff's history of PTSD (R. at 212) and symptoms of depression (R. at 216), for which he prescribed Prozac (id.), and anxiety (R. at 241). Furthermore, an examining psychologist, Dr.

---

[8] Dr. Pearlstein's treatment notes generally reflect that Plaintiff's mood was improved or stable (R. at 257-260) and that she was experiencing some relief of her symptoms from Effexor (R. at 257, 259-260).

Parsons, shared Dr. Pearlstein's opinion that Plaintiff suffers from a major depressive disorder, recurrent, moderate, as well as a generalized anxiety disorder.  (R. at 248)  Dr. Parsons indicated that, as a result, Plaintiff's daily activities were moderately severely restricted, as was her ability to respond appropriately to supervision and customary work pressures and perform complex or varied tasks.  (R. at 250-251)  He opined that her ability to relate to other people, understand, carry out, and remember instructions, respond appropriately to co-workers, and perform simple or varied tasks was moderately impaired.  (Id.) Dr. Parsons observed that Plaintiff's interests were moderately constricted but that her personal habits had not deteriorated at all.  (R. at 250)  While the ALJ is empowered to make credibility determinations and to resolve conflicting evidence, he is "not at liberty simply to ignore uncontroverted medical reports." Suarez v. Sec'y of Health & Human Servs., 740 F.2d 1 (1st Cir. 1984); see also Rohrberg v. Apfel, 26 F.Supp.2d 303, 311 (D. Mass. 1998) (quoting Suarez).

Third, in rejecting Dr. Parsons' opinion, the ALJ appears to have concluded that the symptoms observed by Dr. Parsons were the result of nicotine withdrawal, not a psychiatric condition. (R. 20-21)  Dr. Parsons described Plaintiff as anxious and agitated, distressed, depressed, restless, distracted, and preoccupied.  (R. at 244, 247)  The ALJ summarized Dr. Parsons' report as follows:

> Dr. Parsons' report is grossly inconsistent with Dr. Pearlstein's treatment notes, and appears contemporaneous with Dr. Horan's observations made 2 days earlier that the claimant was in active nicotine withdrawal after quitting smoking.   Both Dr. Horan and Dr. Parsons observed that the claimant was anxious and agitated, while Dr. Parsons' report erroneously indicates that the claimant had quit smoking the year before.

(R. at 20-21)  The ALJ concluded that "[t]he symptoms observed by

Dr. Parsons and described by him as reflecting anxiety or agitation are easily explained as a predictable consequence of nicotine withdrawal of which he could not have been aware, given the erroneous information (she told him she had quit smoking a year earlier) provided to him by the claimant." (R. at 21 n.7) The ALJ is simply not qualified to make this determination. <u>See Manso-Pizarro v. Sec'y of Health & Human Servs.</u>, 76 F.3d 15, 17 (1st Cir. 1996)("With a few exceptions ... an ALJ, as a lay person, is not qualified to interpret raw data in a medical record."); <u>see also Nguyen v. Chater</u>, 172 F.3d 31, 35 (1st Cir. 1999) ("As a lay person, however, the ALJ was simply not qualified to interpret raw medical data in functional terms and no medical opinion supported the determination."). Although Dr. Horan did, as the ALJ stated, note an "[a]nxious tremor" (R. at 241) and that Plaintiff was in nicotine withdrawal two days prior to Dr. Parsons' evaluation (R. at 241, 243), it is mere speculation on the ALJ's part that Plaintiff's nicotine withdrawal caused the symptoms observed by Dr. Parsons. Dr. Parsons administered both the Beck Anxiety Inventory and the Beck Depression Inventory. (R. at 246) He noted that Plaintiff's "response pattern on the Beck Anxiety Inventory was indicative of moderate problems with this emotional state." (<u>Id.</u>) She endorsed eleven items on the inventory. (<u>Id.</u>) Dr. Parsons found Plaintiff's "response pattern on the Beck Depressive Inventory was indicative of moderate to serious problems with this emotional state ...." (<u>Id.</u>) On this inventory, she endorsed sixteen items. (<u>Id.</u>) Despite this testing, the ALJ concluded, using only his lay knowledge, that the symptoms Dr. Parsons observed were better explained as consequences of nicotine withdrawal rather than a major depressive disorder. (R. at 21)

This he cannot do.[9]  See Nguyen v. Chater, 172 F.3d at 35 ("The ALJ was not at liberty to ignore medical evidence or substitute his own views for uncontroverted medical opinion.").

Accordingly, the court cannot conclude that the ALJ's finding that Plaintiff's mental impairment is nonsevere is supported by substantial evidence in the record, especially when coupled with the ALJ's error in failing to follow the required technique for assessing that mental impairment.  Accordingly, remand is required on this issue.

### B.   The ALJ's rejection of the opinions of Plaintiff's treating orthopedist and the state agency physician

The ALJ found that Plaintiff retains the RFC for a range of light work that does not require the use of her left arm to lift above five pounds, work above chest level, or conduct repetitive motion activities.  (R. at 21-22)  Plaintiff argues that the ALJ erred in failing to address the treating orthopedist's opinion that Plaintiff could not use her left arm, had moderate limitations of her right arm, and was disabled.  See Plaintiff's Mem. at 7.  Plaintiff additionally contends that in making this RFC determination, the ALJ ignored the opinion of the state agency physician that she was limited in her ability to reach in all directions, not just overhead.  See id.  The court concludes that the ALJ should have addressed the contrary restrictions in his decision.

"[A]n ALJ may not simply ignore relevant evidence, especially when that evidence supports a claimant's cause."  Lord v. Apfel, 114 F.Supp.2d 3, 13 (D.N.H. 2000); see also 20 C.F.R. §

---

[9] Although the ALJ gave two other reasons for rejecting Dr. Parsons' report, namely that it was inconsistent with Dr. Pearlstein's treatment notes and Plaintiff's description of her daily activities (R. at 20-21), the court is unable to determine to what degree the ALJ's conclusion was colored by his attribution of the symptoms observed by Dr. Parsons to nicotine withdrawal.

404.1527(d) (2005);[10] SSR 96-8p, <u>available at</u> 1996 WL 374184, at
*7 ("The RFC assessment must include a discussion of why reported
symptom-related functional limitations and restrictions can or
cannot reasonably be accepted as consistent with the medical and
other evidence .... The RFC assessment must always consider and
address medical source opinions.  If the RFC assessment conflicts
with an opinion from a medical source, the adjudicator must
explain why the opinion was not adopted."); SSR 96-2p, <u>available
at</u> 1996 WL 374188, at *5 ("Paragraph (d)(2) of 20 C.F.R. [§]
404.1527 ... requires that the adjudicator will always give good
reasons in the notice of the determination or decision for the
weight given to a treating source's medical opinion(s), i.e., an
opinion(s) on the nature and severity of an individual's
impairment(s).").  When the determination or decision is not
fully favorable, "the notice of the determination or decision
must contain specific reasons for the weight given to the
treating source's medical opinion, supported by the evidence in
the case record, and must be sufficiently specific to make clear
to any subsequent reviewers the weight the adjudicator gave to
the treating source's medical opinion and the reasons for that
weight."  SSR 96-2p, at *5.

---

[10] Section 404.1527(d) provides that "[r]egardless of its source,
we will evaluate every medical opinion we receive.  Unless we give a
treating source's opinion controlling weight under paragraph (d)(2) of
this section, we consider all of the following factors in deciding the
weight we give to any medical opinion."  20 C.F.R. § 404.1527(d)
(2005).  The factors are: (1) existence of an examining relationship;
(2) existence of a treatment relationship, including the length,
nature, and extent thereof; (3) the supportability of the opinion; (4)
the consistency of the opinion with the record as a whole; (5) the
specialization of the source; and (6) other factors brought to the
adjudicator's attention.  <u>See</u> 20 C.F.R. § 404.1520(d)(1)-(6).
However, opinions on issues reserved to the Commissioner, such as
whether a claimant is disabled, are not considered medical opinions
and receive no special significance because they are administrative
findings that are dispositive of a case.  <u>See</u> 20 C.F.R. § 404.1527(e);
<u>see also</u> SSR 96-5p, <u>available at</u> 1996 WL 374183, at *2.

In addition, the ALJ is required to consider the findings of state agency medical consultants as opinion evidence and must give reasons for the weight given to such opinions.  See 20 C.F.R. § 404.1527(f);[11] see also Plourde v. Barnhart, No. 02-164-B-W, 2003 WL 22466176, at *4 (D. Me. Oct. 31, 2003)(quoting 20 C.F.R. § 404.1527(f)); Seymour v. Barnhart, No. 02-197-B-W, 2003 WL 22466174, at *4 (D. Me. Oct. 31, 2003)(same); Quigley, 224 F.Supp.2d at 368 (same); SSR 96-6p, available at 1996 WL 374180,

---

[11] Section 404.1527(f) provides in relevant part:

(2) Administrative law judges ... will consider opinions of State agency medical or psychological consultants, other program physicians and psychologists, and medical experts as follows:
(i) Administrative law judges are not bound by any findings made by State agency medical or psychological consultants, or other program physicians or psychologists.  However, State agency medical and psychological consultants and other program physicians and psychologists are highly qualified physicians and psychologists who are also experts in Social Security disability evaluation.  Therefore, administrative law judges must consider findings of State agency medical and psychological consultants or other program physicians or psychologists as opinion evidence, except for the ultimate determination about whether you are disabled.  See § 404.1512(b)(6).
(ii) When an administrative law judge considers findings of a State agency medical or psychological consultant or other program physician or psychologist, the administrative law judge will evaluate the findings using relevant factors in paragraphs (a) through (e) of this section, such as the physician's or psychologist's medical specialty and expertise in our rules, the supporting evidence in the case record, supporting explanations provided by the physician or psychologist, and any other factors relevant to the weighing of the opinions.  Unless the treating source's opinion is given controlling weight, the administrative law judge must explain in the decision the weight given to the opinions of a State agency medical or psychological consultant or to other program physician or psychologist, as the administrative law judge must do for any opinions from treating sources, nontreating sources, and other nonexamining sources who do not work for us.

20 C.F.R. § 404.1527(f)(2).

at *4 ("At the administrative law judge and Appeals Council
levels, RFC assessments by State agency medical or psychological
consultants or other program physicians are to be considered and
addressed in the decision as medical opinions from nonexamining
sources about what the individual can still do despite his or her
impairment(s).").

Here, Dr. Brennan noted on December 20, 2001, that Plaintiff
"has difficulty with any type of lifting, overhead reaching, or
activity with the shoulder ... [n]o use of left arm."  (R. at
190)  In a May 21, 2002, letter to Plaintiff's counsel, Dr.
Brennan reiterated that Plaintiff was restricted "in any activity
or job which would require use of the left upper extremity" (R.
at 202) and also "to a moderate degree use of the right upper
extremity secondary to the cervical symptoms" (id.).  Dr.
Bennett, the DDS physician who reviewed Plaintiff's medical
records in conjunction with the reconsideration of her
application for DIB, indicated a limitation in Plaintiff's
ability to reach in all directions, including overhead.  (R. at
194, 196)  Nowhere in the ALJ's decision does he mention or
discredit these opinions of Drs. Brennan and Bennett.

Although Defendant contends that the ALJ decided not to give
Dr. Brennan's and Dr. Bennett's opinions weight because they were
not supported by the evidence in the record, see Defendant's Mem.
at 12-13, the court is unable to determine whether that is, in
fact, the case, or whether the opinions were overlooked.  See
Quigley v. Barnhart, 224 F.Supp.2d 357, 368 (D. Mass. 2002)
("Since [the doctor's] assessment was not mentioned in the ALJ's
decision, it is unknown whether it was overlooked or considered
and disregarded."); Lord, 114 F.Supp.2d at 14 ("[B]ecause the
ALJ's decision completely failed to mention any of the post-
hearing evidence, it is impossible to determine whether this
evidence was considered and implicitly discredited or instead was

simply overlooked."). Thus, the court cannot accept Defendant's position that any error in failing to explain the weight given to these opinions is harmless, see Defendant's Mem. at 12-13, and declines to find that the ALJ's RFC finding is supported by substantial evidence in the record, see Nguyen v. Chater, 172 F.3d at 35 ("The ALJ's findings of fact are conclusive when supported by substantial evidence, 42 U.S.C. § 405(g), but are not conclusive when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts."); Lord, 114 F.Supp.2d at 14 ("For a reviewing court to be satisfied that an ALJ's decision was supported by substantial evidence, that decision must take into account whatever in the record fairly detracts from its weight.")(citation and internal quotation marks omitted).

Accordingly, the matter is remanded for a reassessment of Plaintiff's RFC. The Commissioner shall direct the ALJ to address the limitations noted by Drs. Brennan and Bennett and to explain the weight given to each opinion.[12]

## C. The ALJ's finding that Plaintiff retained the RFC to perform her past relevant work

The ALJ found that Plaintiff possessed the requisite RFC to perform her past relevant work as a manager of a roller skating rink as it is usually performed in the regional or national economy. (R. at 22) Plaintiff argues that the ALJ "improperly bifurcated [Plaintiff's] job responsibilities and then classified her past work as a 'roller rink manager,' the least strenuous aspect of her job." Plaintiff's Mem. at 12. The court rejects this argument.

A claimant can be found to be capable of returning to past relevant work when he or she can either: (1) perform the

---

[12] The ALJ need not address Dr. Brennan's opinion that Plaintiff is disabled. See n.10.

particular functional demands and job duties peculiar to an individual job as he or she performed it; or (2) perform the functional demands and job duties of the job as ordinarily required by employers throughout the national economy. See SSR 82-61, available at 1982 WL 31387, at *2.

> A former job performed ... by the claimant may have involved functional demands and job duties significantly in excess of those generally required for the job by other employers throughout the national economy. Under this test, if the claimant cannot perform the excessive functional demands and/or job duties actually required in the former job but can perform the functional demands and job duties as generally required by employers throughout the economy, the claimant should be found to be "not disabled."

Id. Accordingly, the First Circuit has established that "a claimant does not make a prima facie showing of disability merely by establishing that she cannot return to a particular prior job. Rather, the claimant must establish an inability to return to her former type of work." Gray v. Heckler, 760 F.2d 369, 372 (1st Cir. 1995); accord Andrade v. Sec'y of Health & Human Servs., 985 F.2d 1045, 1051 (10th Cir. 1993)(holding that a "claimant bears the burden of proving his inability to return to his particular former job and to his former occupation as that occupation is generally performed throughout the national economy"). The Tenth Circuit in Andrade rejected an argument similar to that made by Plaintiff here. See Andrade, 985 F.2d at 1051 (rejecting plaintiff's argument that SSR 82-61 does not authorize the ALJ to consider only the lighter duties of his past job but must categorize the occupation in a way that reflects all significant aspects of the particular past job).

At the March 4, 2003, hearing, the VE testified that although Plaintiff was unable to perform her past relevant work as she performed it in the past, she was able to perform her past relevant work as it is usually performed. (R. at 56)  The ALJ

relied on this testimony in his decision.  (R. at 22)  The court
concludes that the ALJ did not "improperly bifurcate[] [her] job
responsibilities," Plaintiff's Mem. at 12, and, given his RFC
assessment, properly found that she could perform her past
relevant work as it is generally performed, see SSR 82-61, at *2;
see also Andrade, 985 F.2d at 1052 (finding that plaintiff had
not shown that the more strenuous demands of his former job were
among the duties of that job as it is generally performed or that
his job duties were sufficiently distinct from the Dictionary of
Occupational Titles description to constitute a different line of
work).

### Summary

For the reasons stated above, the court finds that the ALJ
erred in assessing the severity of Plaintiff's mental impairment
in that he did not document use of the special technique for
evaluation of mental impairments and in rejecting the opinions of
the treating psychiatrist and examining psychologist.  The court
further finds that the ALJ erred in formulating Plaintiff's RFC
by ignoring the opinions of the treating orthopedist and state
agency physician.  The court finds no error in the ALJ's
distinguishing between Plaintiff's job as she actually performed
it and her past relevant work as generally performed in the
national economy.[13]

### Conclusion

For the reasons stated above, the court finds that the ALJ's
decision that Plaintiff is not disabled contains legal errors.
The court is, therefore, unable to determine whether the ALJ's
decision is supported by substantial evidence in the record.
Accordingly, the court grants Plaintiff's Motion for Summary

---

[13] The court notes that the ALJ may have to revisit his finding
that Plaintiff can perform her past relevant work as it is generally
performed in the national economy if his RFC assessment changes on
remand.

Judgment, denies Defendant's Motion to Affirm, and remands the matter to the Commissioner for further administrative proceedings consistent with this Memorandum and Order.

So ordered.

ENTER:                                      BY ORDER:

_____                    _____
DAVID L. MARTIN                             Deputy Clerk
United States Magistrate Judge
September 30, 2005